UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN JAVIE,<br><br>        *Plaintiff,*<br>v.<br><br>MASSACHUSETTS CASUALTY INSURANCE COMPANY, now known as Centre Life Insurance Company, and SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.),<br><br>        *Defendants.* | Civil Action No. 18-2748<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns a former National Basketball Association ("NBA") referee's disability insurance policy. Plaintiff Steven Javie alleges that Defendants Massachusetts Casualty Insurance Company (now known as Centre Life Insurance Company) ("MC"), and Sun Life Assurance Company of Canada (U.S.) ("SL") are unlawfully refusing to pay benefits to Plaintiff that a representative guaranteed to Plaintiff when acquiring the policy. D.E. 1. Currently pending before the Court is Defendants' motion to dismiss Counts II, III, and IV of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) for failure to state a claim. D.E. 19. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is granted.

---

[1] Defendants' brief in support of their motion will be referred to as "Def. Br.," D.E. 19-1; Plaintiff's opposition will be referred to as "Pl. Opp'n," D.E. 23; Defendants' reply will be referred to as "Def. Reply," D.E. 27.

## I. INTRODUCTION[2]

Plaintiff began working as an NBA referee in 1996. Compl. ¶ 8. In September of the same year, Plaintiff participated in a referee training camp in New Jersey. *Id.* ¶ 9. As part of this training camp, Plaintiff attended a union meeting hosted by the National Basketball Referees Association ("NBRA") on September 29, 1996. *Id.* ¶ 9. At the meeting, Steven D. Lucas promoted a supplemental disability insurance policy offered by Defendant MC. *Id.* ¶ 10. Lucas was a sales representative for Defendant SL, who Defendant MC designated as administrator for MC's disability income products. *Id.* ¶ 11.

At the meeting, Lucas represented that the policy would cover NBA referees if they are "totally disabled from being an NBA official," and is "guaranteed . . . to age 65." *Id.* ¶ 13. Lucas clarified that "[i]f you can't be an official but you can work in a store some place you go ahead and work there," as you are still considered "totally disabled" under the policy. *Id.* He emphasized that "[p]ure and simple if you have an injury or accident that keeps you from doing your job and your doctor can attest to it you're going to collects [sic] benefits under this contract. Pure and simple." *Id.* ¶ 13. In reliance on these representations, Plaintiff purchased a supplemental disability policy (the "Policy") from Defendant MC on November 1, 1996. *Id.* ¶ 14; D.E. 1, Ex. A.

While the Policy was in effect, Plaintiff suffered an injury that prevented him from working as an NBA referee. *Id.* ¶ 17. MC initially acknowledged coverage under the Policy and began

---
[2] The facts are derived from Plaintiff's Complaint. D.E. 1 ("Compl."). When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

paying benefits to Plaintiff. *Id.* ¶ 18. Plaintiff then secured alternative employment as an analyst for ESPN. *Id.* ¶ 19. As a result, on May 25, 2017, MC notified Plaintiff that his disability benefits under the Policy would terminate on June 28, 2017 – before Plaintiff turned 65. *Id.* ¶¶ 19, 20.

On February 27, 2018, Plaintiff brought his Complaint against Defendants in this Court, alleging the following four Counts: (I) breach of contract against MC, (II) breach of covenant of good faith and fair dealing against MC, (III) bad faith in violation of 42 Pa.C.S. § 8371 against MC, and (IV) fraud against both Defendants. *Id.* ¶¶ 17-44. Defendants moved to dismiss Counts II, III, and IV of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) for failure to state a claim. D.E. 19. Plaintiff filed opposition, D.E. 23, to which Defendants replied, D.E. 27.

## II.    LEGAL STANDARD

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Rule 9(b)

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with

4

which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' Counts for breach of covenant good faith and fair dealing (Count II), bad faith (Count III), and fraud (Count IV). Def. Br. at 1. The Court addresses each Count in turn.

<u>Good Faith and Fair Dealing (Count II)</u>

Plaintiff brings a claim for breach of covenant of good faith and fair dealing (Count II) as well as a claim for breach of contract (Count I). Compl. ¶¶ 17-26. Defendants argue that the breach of covenant of good faith and fair dealing claim (Count II) must be dismissed under Pennsylvania law[3] because a plaintiff cannot bring this type of claim alongside a breach of contract claim. Def. Br. at 4. Indeed, "no independent cause of action for a breach of the covenant of good faith and fair dealing—arising in contract—[exists] in Pennsylvania because such a breach is merely a breach of contract." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009) (citing *Birth Ctr. v. St. Paul Companies, Inc.*, 567 Pa. 386, 400-03 (2001) and *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 506-08 (1966)). Plaintiff does not dispute this assertion. *See* Pl. Opp'n at 16 (merely arguing that "under Pennsylvania law [] a breach of contract claim and *statutory* bad faith claim may be brought together," but making no argument as to whether a *common law* claim for breach of covenant of good faith and fair dealing may be brought

---

[3] Defendants argue, and Plaintiff does not dispute, that Pennsylvania law controls the breach of contract related claims because the "Policy lists Pennsylvania as the state whose laws will be applied to all claims arising under it." Def. Br. at 1 n. 1; *see also* Policy at 10, Schedule. The Court therefore applies Pennsylvania law as to the breach of contract related claims.

alongside a breach of contract claim) (emphasis added). The Court accordingly dismisses Plaintiff's breach of covenant of good faith and fair dealing claim (Count II) with prejudice.

Bad Faith (Count III)

Plaintiff next brings a Pennsylvania statutory claim for bad faith pursuant to 42 Pa.C.S. § 8371 ("Section 8371") against MC.[4] Compl. ¶¶ 27-36. In order to recover under Section 8371, a plaintiff "must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 156 (2017) (citing 42 Pa.C.S. § 8371). MC argues that Plaintiff fails to plausibly plead this bad faith claim because it had a reasonable basis for discontinuing disability benefits – namely, the terms of the Policy. Def. Br. at 5-6.

The Policy provides that MC "will pay monthly benefits for a Total Disability" to "age 65." Policy at 3, Schedule. The Policy defines "Total Disability" as when the insured

> is unable to perform all the substantial and material duties of his/her occupation; but, after 60 successive months of total disability for which monthly benefits have been paid, and if such disability continues, the term shall then mean the Insured's substantial

---

[4] This statute reflects a

> a delayed legislative response to [the Pennsylvania Supreme] Court's 1981 decision in *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), [] which [] declined to recognize the common law right of action [for breach of covenant of good faith and fair dealing] that had been adopted by a number of courts throughout the United States at that time related to an insurer's failure to act in good faith when refusing to cover a loss under an insured's policy.

*Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 166 (2017). In other words, the statutory provision in Pennsylvania replaces a common law claim for breach of covenant of good faith and fair dealing as recognized by other states.

6

> inability to perform the material duties of *any gainful occupation* for which he/she is suited[.]

Policy at 3 (emphasis added). After Plaintiff's injury prevented him from refereeing in the NBA, Plaintiff secured alternative gainful employment as an ESPN analyst. Compl. ¶ 19. MC then notified Plaintiff that his benefits under the Policy would terminate on June 28, 2017, *id.* ¶ 19 – after five years (60 months) of successive total disability benefits, *see* Pl. Opp'n at 13 (admitting that the disabling knee injury occurred in June 2012). Thus, because five years of successive monthly payments had seemingly elapsed and Plaintiff had since secured *any* gainful employment, MC had a reasonable basis to terminate benefits under the terms of the Policy.

Nonetheless, Plaintiff argues that MC did not have a reasonable basis to enforce these terms because MC was on notice of Lucas' misrepresentations to Plaintiff. Pl. Opp'n at 16. Specifically, Plaintiff argues that MC "has been sued before and the deposition of [Lucas] had been taken wherein he admitted his conduct." *Id.* Plaintiff however makes no mention of this prior suit or deposition in his Complaint. The Complaint is silent as to Defendants' knowledge of Lucas' statements. Instead, the Complaint attaches the Policy, and under the terms of the Policy, Defendants had a reasonable basis for terminating Plaintiff's benefits. And a plaintiff cannot amend his complaint by way of briefing. *See Pennsylvania ex rel. v. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). The Court therefore dismisses Plaintiff's bad faith claim (Count III) without prejudice.

Fraud (Count IV)

Defendants argue that Plaintiff's fraud claim is barred by the "gist of the action" doctrine. Def. Br. at 8-10. Under Pennsylvania law, "[a]s a practical matter, the [gist-of-the-action] doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll,*

7

*Inc. v. Elias/Savion Advert., Inc.*, 2002 Pa. Super. 347 (Pa. Sup. Ct. 2002). Pennsylvania first recognized the doctrine in *Bash v. Bell Tel. Co.*, explaining that

> [a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals .... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

411 Pa. Super. 347, 356 (Pa. Sup Ct. 1992) (quoting *Iron Mountain Security Storage Corporation v. American Specialty Foods, Inc.*, 457 F. Supp. 1158 (E.D. Pa. 1978)).

The gist-of-the-action doctrine therefore bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*eToll*, 2002 Pa. Super. at 347 (internal quotations and citations omitted). More generally, the test is such that a tort claim is grounded in "the breach of duties imposed as a matter of social policy," and a breach of contract claim is grounded in "the breach of duties imposed by mutual consensus." *Id.* In other words, "[t]o be construed as in tort . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* (citing *Bash*, 411 Pa. Super. At 356).

The Superior Court of Pennsylvania addressed the interplay between fraud and the gist-of-the-action doctrine in *eToll*. *Id.* In *eToll*, a software developer sued an advertising company and its employees for billing for services that were "unauthorized, unnecessary, excessive or in some cases entirely fictitious," and "accepting payments from [the plaintiff] for services which were not actually performed." *Id.* The court noted a distinction between "fraud within the performance of

a contract," and "fraud in the inducement of a contract," which "would not necessarily be covered by [the] doctrine because fraud to induce a person to enter into a contract is generally collateral to (*i.e.*, not 'interwoven' with) the terms of the contract itself." *Id.* (citing *Foster v. Nw. Mut. Life*, No. 02-2211, 2002 WL 31991114, at *2-3 (E.D. Pa. July 26, 2002)) (emphasis omitted). Yet, in *eToll*, "[a]ll of these alleged acts of fraud arose in the course of the parties' contractual relationship," as "the [defendants'] duties regarding billing and performance were created and grounded in the parties' contract." *Id.* Thus, the court found that "[b]ecause the gist of [the plaintiff's] fraud action lies in contract, the trial court did not err as a matter of law in dismissing the fraud claim under the gist of the action doctrine." *Id.*

The Superior Court of Pennsylvania reached the opposite conclusion in *Sullivan v. Chartwell Inv. v. Partners, LP*, 2005 Pa. Super. 124 (Pa. Super. 2005). In *Sullivan*, an employer made several promises to an employee to induce the employee to enter into certain employment agreements. *Id.* The employer eventually reneged on the promises, and the employee sued the employer for, *inter alia*, breach of contract and fraud. *Id.* The Superior Court of Pennsylvania recognized that "the Compensation Agreement and the Severance Agreement clearly govern the parties' contractual relationship; however, Appellant's allegations do not relate to Appellee's failure to perform its obligations under the contracts." *Id.* The court in *Sullivan* continued that "the tort claims that [the plaintiff] raised in his amended complaint relate to [the defendant]'s fraudulent promises that *induced* [the plaintiff] to enter the contracts." *Id.* (emphasis added). The court clarified that "[s]pecifically, [the plaintiff] alleged that [the defendant] fraudulently and/or negligently agreed to perform obligations that it never intended to perform in order to induce [the plaintiff] to agree to the proposed changes to his compensation package and to forgo an immediate resignation." *Id.* Thus, the *Sullivan* court concluded, "since [the plaintiff]'s tort claims relate to

9

the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine." *Id.*

*American Guarantee & Liability Insurance Co. v. Fojanini*, 90 F. Supp. 2d 615 (E.D. Pa. 2000) is analogous. In *Fojanini*, the plaintiffs alleged that the defendants misrepresented the state of the defendants' company in order to lure the plaintiffs into marketing the defendants' product. *Id.* at 617. The district judge found that "[t]he core of [the plaintiffs'] claim is that they were duped into spending large amounts of time and energy on [the defendants' company's] behalf in reliance upon representations made by the [defendants] that [the defendants' company] had its financial house in order." *Id.* at 623. The *Fojanini* court continued that "[w]hile the underlying complaint contains allegations that agreements were breached, the action as a whole clearly sounds in tort, as the action is grounded in the general duty to exercise reasonable care in making representations that could result in reliance." *Id.*

Here, the facts are more akin to *Sullivan* and *Fojanini* than *eToll*. While the underlying Complaint makes a claim for breach of contract, the action is grounded in Lucas' representations *before* Plaintiff's contract with MC, which *induced* Plaintiff into purchasing the Policy. Compl. ¶¶ 14 ("Relying on those representations [by Lucas], Javie purchased the Policy[.]"). Thus, Plaintiff sufficiently alleges that Defendants (through Lucas) duped Plaintiff into purchasing the Policy via representations that they never intended to honor. The Court therefore rejects Defendants' argument that Plaintiff's fraud claim is barred by the gist-of-the-action doctrine.[5]

---

[5] Plaintiff contests whether the gist-of-the-action doctrine can even be applied, arguing that New Jersey law applies to the tort claims and that New Jersey does not recognize the doctrine. Pl. Opp'n at 27-28. Because the Court finds that even under Pennsylvania law the doctrine does not apply to the facts as alleged, the Court does not address this choice of law issue at this time.

Defendants also argue that Plaintiff's fraud claim is not pled with particularity. Def. Br. at 11-13. Under both New Jersey and Pennsylvania law,[6] a plaintiff must show that (1) the defendant made a material misrepresentation, (2) with knowledge of its falsity, (3) with the intention that the plaintiff rely on it, (4) justifiable reliance by the plaintiff, and (5) damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997); *Kostryckyj v. Pentron Lab. Techs., LLC*, 2012 Pa. Super. 152 (Pa. Super. 2012).

As to the knowledge element, Plaintiff relies on a deposition of Lucas from a prior suit involving Defendants. Pl. Opp'n at 19-20. However, as noted above, Plaintiff fails to include these allegations in his Complaint. As also noted, Plaintiff cannot amend his Complaint through his opposition briefing. *See Zimmerman*, 836 F.2d at 181. Plaintiff's Complaint does not provide any other indication that Defendants were aware of these false statements being made by Lucas. Thus, the Court dismisses Plaintiff's fraud claim (Count IV) without prejudice.

---

[6] "The elements for maintaining an action for fraud under New Jersey law are virtually identical to that of Pennsylvania." *A. Valey Engineers, Inc. v. Rouse Co.*, No. 86-1597, 1989 WL 89984, at *8 n. 3 (E.D. Pa. Aug. 9, 1989). Therefore, the Court does not address the choice of law issue as to the tort claims at this time.

## IV. CONCLUSION

In sum, the Court grants Defendants' motion to dismiss Counts II, III, and IV of Plaintiff's Complaint. D.E. 19. Count II is dismissed with prejudice. Counts III and IV are dismissed without prejudice. Plaintiff has thirty (30) days to file an amended complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file an amended complaint, the dismissal of Counts III and IV also will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: August 8, 2019

                                               John Michael Vazquez, U.S.D.J.